UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

RUSSELL G., JR.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 2:19-cv-00094

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR AN ORDER REVERSING THE DECISION OF THE COMMISSIONER AND GRANTING THE COMMISSIONER'S MOTION TO AFFIRM
(Docs. 9 & 15)

Plaintiff Russell G. Goodell, Jr. is a claimant for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under the Social Security Act ("SSA") and brings this action pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social Security Commissioner (the "Commissioner") that he is not disabled.[1] (Doc. 9.) The Commissioner moves to affirm. (Doc. 15.) Plaintiff replied on May 4, 2020, at which time the court took the pending motions under advisement.

After his applications for DIB and SSI were denied initially and on reconsideration by the Social Security Administration, Administrative Law Judge ("ALJ") Lisa Groeneveld-Meijer found Plaintiff was not disabled based on her conclusion that Plaintiff can perform jobs that exist in significant numbers in the national economy.

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Plaintiff identifies three errors in the ALJ's disability determination: (1) the ALJ erred in finding that Plaintiff could frequently finger and feel with his right hand; (2) the ALJ erred in weighing the medical opinions of treating source Monique Karthaus, PA and medical consultant John Kwock, MD; and (3) the ALJ erred in adopting the testimony of Vocational Expert ("VE") Susan Gaudet regarding walking requirements. Plaintiff seeks a remand for a calculation of benefits.

Plaintiff is represented by Phyllis E. Rubenstein, Esq. The Commissioner is represented by Special Assistant United States Attorneys Emily M. Fishman and Molly E. Carter.

## I.     Procedural History.

Plaintiff protectively filed applications for DIB and SSI on August 24, 2017, alleging a disability onset date of April 3, 2012. His claim was denied initially on December 5, 2017 and upon reconsideration on March 2, 2018. Plaintiff timely filed a request for a hearing, which was held before ALJ Groeneveld-Meijer via videoconference on October 24, 2018. Plaintiff appeared in person and was represented by a non-attorney representative. Plaintiff, medical consultant Dr. Kwock, and VE Gaudet testified.

After ALJ Groeneveld-Meijer issued an unfavorable decision on November 7, 2018, Plaintiff filed a timely appeal before the Appeals Council, which denied review on April 9, 2019. As a result, the ALJ's disability determination stands as the Commissioner's final decision.

## II.    The ALJ's November 7, 2018 Decision.

In order to receive DIB or SSI under the SSA, a claimant must be disabled on or before the claimant's date last insured. A five-step, sequential-evaluation framework determines whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy

that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at [S]teps [O]ne through [F]our of the sequential five-step framework established in the SSA regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citation omitted). At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (alterations in original) (internal quotation marks omitted).

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 3, 2012, his alleged onset date. At Step Two, the ALJ concluded Plaintiff had the following severe impairments: degenerative joint disease, degenerative disc disease of the cervical and lumbar spines, status post right carpal tunnel release, and internal derangement of the right knee.

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. The ALJ determined that Plaintiff remained capable of ambulating and performing fine and gross movements effectively. She noted that no treating or examining physician suggested that Plaintiff met or medically equaled the criteria in any of the Listings, and that impartial medical expert Dr. Kwock had considered listings 1.02 and 1.04 and determined they were not satisfied.

At Step Four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with no more than occasional climbing of ladders, ropes, or scaffolds. He could engage in only frequent stooping and occasional crawling and crouching. Day to day, the work should not include more than frequent fingering or feeling on the right. In the work environment there should be no concentrated exposure to potential hazards such as

3

>unprotected heights or uneven terrain. The claimant requires the option to sit or stand.

(AR 19.)

Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform his past relevant work as a materials handler and construction worker with the limitations identified in his RFC. She noted that Plaintiff was forty-seven years old as of his alleged onset date, placing him within the category of "younger" individuals as defined by the regulations but during the pendency of his applications he changed to "closely approaching advanced age[.]" *Id.* at 24. She further noted that Plaintiff had a "limited" education and was able to communicate in English. *Id.*

Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined at Step Five that Plaintiff could perform jobs that exist in significant numbers in the national economy, including "laundry folder[,]" "package sorter[,]" and "storage facilities rental clerk[.]" *Id.* at 25. The ALJ found that there exist 10,000 positions in the national economy for laundry folder, 23,000 positions for package sorter, and 22,000 positions for storage facilities rental clerk. Although the sit/stand option is not addressed in the Dictionary of Occupation Titles ("DOT"), the ALJ determined, based on the VE's testimony, that at least 85-90% of employers for these three positions would have chairs available. For this reason, the ALJ determined Plaintiff was not disabled from April 3, 2012 through November 7, 2018, the date of her decision.

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (citation and internal quotation marks omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013)

4

(internal quotation marks omitted).

It is the Commissioner who resolves evidentiary conflicts and determines credibility issues, and the court "should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *see also Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (noting "genuine conflicts in the medical evidence are for the Secretary to resolve"). Even if the court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

### B. Whether the ALJ Erred in Finding that Plaintiff Could Frequently Finger and Feel with his Right Hand.

Plaintiff asserts that the ALJ erred in finding that Plaintiff could frequently finger and feel using his right hand because both PA Karthaus and Dr. Kwock opined that Plaintiff was unable to finger or feel with that hand more than "infrequently." According to the administrative record, Dr. Kwock testified that "[t]here are upper extremity limitations. They are complaint[s] of fingering and feeling; they are divided between the right and left. The right, infrequent; the left being continuous." (AR 41.) The Commissioner argues this testimony was erroneously transcribed and that Dr. Kwock can be heard on a recording stating that fingering and feeling on his right hand was limited to frequent. Because this evidence is not in the record, the court cannot properly consider it. *See Casiano v. Apfel*, 39 F. Supp. 2d 326, 330 (S.D.N.Y. 1999) (holding that "[e]vidence not contained in the administrative record may not be considered when reviewing the findings of the Commissioner.").

An RFC determination represents "the most [a claimant] can still do despite [their] limitations[,]" and is determined based on "all the relevant evidence" in the record, including evidence of both severe and non-severe medically determinable impairments. 20 C.F.R. § 404.1545(a)(1)-(2). "In deciding a disability claim, an ALJ is tasked with

'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 256-57 (W.D.N.Y. 2018) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). "[A]n ALJ is free . . . to choose between properly submitted medical opinions" in rendering his or her analysis, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal alterations, quotation marks, and citations omitted), and need not "reconcile every conflicting shred of medical testimony" as long as the ALJ "acknowledge[s] relevant evidence or explain[s] [her] implicit rejection of it." *Falcon v. Apfel*, 88 F. Supp. 2d 87, 90 (W.D.N.Y. 2000) (citations omitted).

Although the ALJ found the medical opinion of Dr. Kwock persuasive, she limited Plaintiff's RFC to fingering and feeling with his right hand no more than frequently. She provided no explanation for rejecting Dr. Kwock's opinion recommending a more restrictive limitation of infrequently although this lends credence to the Commissioner's argument that Dr. Kwock's testimony was mis-transcribed. Because the court cannot credit that argument, especially without its own review of the audio recording which is not in the record, it proceeds on the assumption that Plaintiff is correct that the ALJ rejected a limitation recommended by Dr. Kwock without explanation.

"[A]n ALJ may not 'cherry pick' medical opinions that support his or her opinion while ignoring opinions that do not." *Thomas v. Berryhill*, 337 F. Supp. 3d 235, 244 (W.D.N.Y. 2018). "The obligation to explain why certain elements of an opinion were not adopted is triggered when 'the RFC assessment conflicts with an opinion from a medical source[.]'" *Marshall L. v. Berryhill*, 2018 WL 2192191, at *11 (W.D.N.Y. May 14, 2018) (quoting SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996)). It was thus error for the ALJ to fail to explain why she did not adopt Dr. Kwock's limitations on right hand fingering and feeling. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even – and perhaps especially – when those dispositions are unfavorable."). Any error was, however, harmless because even if Plaintiff could not finger or feel with his right hand, he could still perform jobs that exist in sufficient number in the national

economy. The VE testified that, given Plaintiff's RFC, he could perform the jobs of laundry folder, package sorter, price marker, and storage facilities rental clerk. Of these three positions, the job of storage facilities rental clerk did not require fingering or feeling and there were approximately 22,000 positions for this job in the national economy.

According to SSA regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his or her] physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b), 416.966(b). In other words, "[t]he Commissioner need show only one job existing in the national economy" in significant numbers that Plaintiff can perform to find he is not disabled at Step Five. *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) (summary order).

"[I]solated jobs that exist only in very limited numbers in relatively few locations" do not meet the regulatory definition of "work which exists in the national economy." 20 C.F.R. §§ 404.1566(b), 416.966(b). Courts in the Second Circuit "have generally held that what constitutes a 'significant' number is fairly minimal." *Roe v. Colvin*, 2015 WL 729684, at *7 (N.D.N.Y. Feb. 19, 2015) (quoting *Fox v. Comm'r of Soc. Sec.*, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009)). 22,000 positions in the national economy satisfies this threshold. *See Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 177 (W.D.N.Y. 2018) (finding that "numbers similar to those presented here – between 9,000 and 10,000 jobs – have typically been found to be sufficiently 'significant' to meet the Commissioner's burden") (collecting cases); *Gray v. Colvin*, 2014 WL 4146880, at *6 (W.D.N.Y. Aug. 19, 2014) (holding "it cannot be said that totals of over 16,000 jobs nationally and 60 regionally . . . are not 'significant' as a matter of law, given the low threshold evidently required").

Because the ALJ identified at least one job existing in the national economy that Plaintiff could perform, even if he could only finger or feel infrequently with his right hand as indicated by Dr. Kwock, the ALJ's error was harmless. *See Pelland v. Comm'r of Soc. Sec.*, 2014 WL 6814908, at *7 (D. Vt. Dec. 2, 2014) (holding that "any error was harmless because the ALJ identified at least one other occupation . . . that is present in

significant numbers in the national economy that a person with [claimant's] limitations could perform"); *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (holding that "[w]here application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration") (internal quotation marks, alterations, and citation omitted).

### C. Whether the ALJ Erred in Adopting the Testimony of VE Gaudet Regarding Walking Requirements.

Plaintiff contends that the ALJ erred in adopting VE Gaudet's testimony that the position of laundry folder required "almost negligible walking" and the position of package sorter required "very little walking." (AR 80-81.) This testimony contradicts DOT regulations which state that both positions involve significant standing, walking, pushing, and/or pulling. Social Security Ruling 00-4P states:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-4p, 2000 WL 1898704 (S.S.A.).

In this case, "[the VE] neither informed the ALJ of the discrepancy between her professional opinion and the DOT's description, nor provided a reasonable explanation for the conflict." *Sanchez v. Barnhart*, 329 F. Supp. 2d 445, 454 (S.D.N.Y. 2004). This unexplained contradiction "effectively deprived the ALJ of an opportunity to inquire into the nature of the discrepancy and make a precise and informed decision in applying the medical evidence to the universe of jobs available in the economy[.]" *Id.* However, in finding that Plaintiff could perform other jobs existing in significant numbers in the economy, the ALJ also relied on the VE's testimony that Plaintiff could perform the job of storage facilities rental clerk. Thus, even if the ALJ erred in relying on the VE's testimony regarding the positions of laundry folder and package sorter, this error was harmless because the ALJ identified at least one occupation Plaintiff is capable of

performing that exists in significant numbers in the national economy which did not involve significant walking.

### D. Whether the ALJ Properly Weighed the Medical Opinion Evidence.

Plaintiff contends that the ALJ erred in finding the opinion of treating source Monique Karthaus, PA, not persuasive and finding the opinion of non-treating, non-examining medical consultant Dr. Kwock persuasive. The Social Security Administration recently revised the regulations concerning how it weighs medical opinion evidence in disability determinations. For claims filed on or after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[s] or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *accord Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (per curiam). Instead, an ALJ must consider each medical opinion or prior administrative finding in the record and evaluate its persuasiveness in accordance with five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (including: (i) length of treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of treatment relationship, (v) examining relationship), (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c).

The revised regulations state that "the most important factors [an ALJ] consider[s]" when determining persuasiveness of a medical opinion are supportability and consistency. *Id.* § 404.1520c(b)(2). An ALJ must therefore address whether a medical opinion is supportable and consistent, but need not address the remaining three factors. *Id.* If an ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record, the ALJ must articulate how he or she considered the remaining three factors. *Id.* § 404.1520c(b)(3).

Impartial medical expert Dr. Kwock testified at the administrative hearing and opined that Plaintiff suffered from degenerative disc and degenerative joint disease in his cervical and lumbar spine, was status post right carpal tunnel release, and had right knee

9

internal derangements. In light of the nature and severity of these conditions, he concluded that Plaintiff was able to perform light work, could lift and carry up to ten pounds frequently and twenty pounds occasionally, could sit for eight hours, and stand and walk for six hours out of an eight-hour work day. Dr. Kwock opined that Plaintiff could continuously climb stairs and ramps, frequently climb ladders or scaffolds, balance and kneel continuously, stoop frequently, and crouch and crawl occasionally.

At Step Four, the ALJ found Dr. Kwock's opinion persuasive because it was "well supported by and consistent with the medical evidence of record." (AR 23.) She noted that Dr. Kwock cited to specific imaging studies, clinical examinations, operative reports, and observations of the claimant's behavior which supported his opinion. Dr. Kwock's opinions were moreover consistent with consultative examining physician Fred Rossman, MD's March 2017 and November 2017 examinations which found that Plaintiff could ambulate without an ataxic or antalgic gait and could use stairs without an assistive device.[2] The ALJ further noted that the "objective medical evidence overall does not document deficits in strength, gait abnormalities, or that the claimant presented in pain or distress" and cited to treatment notes which supported this conclusion.[3] (AR 21.)

---

[2] *See* AR 344 (at March 23, 2017 examination, noting that Plaintiff "enters the office ambulating without ataxic or antalgic gait" and is "able to enter and leave the office using the stairs (x10 steps)"); AR 418 (at November 2, 2017 examination, finding the same).

[3] *See, e.g.*, AR 425 (treatment notes from a January 18, 2018 appointment with Kevin Kerin, MD, indicating that Plaintiff did not present in any distress, could rise from his chair easily without pain, had "normal strength" and his back films "did not show any worrisome changes suggesting a pathological process involving the lumbar spine."); *Id.* at 452 (at a December 20, 2017 examination, Alana M. Nevares, MD, found that Plaintiff had full range of motion throughout his body, though he had "painful full abduction as well as passive" in his shoulders); *Id.* at 475 (at a June 13, 2018 examination, Brian Aros, MD, observed that Plaintiff was in "no acute distress[,]" was able to ambulate without an antalgic gait, squat without any joint discomfort, and had "a medial meniscal tear, but has no meniscal signs on his exam and no symptoms along the medial compartment."); *Id.* at 525 (at a July 25, 2018 examination, Janessa Vandette, PA-C, noted that while Plaintiff's physical exam radiographic findings were "consistent with upper back and neck myofascial pain[,]" he was in no acute distress and had full strength in his shoulders); *Id.* at 571 (at a September 25, 2018 examination, Sarah Britton, NP, observed that Plaintiff "walked with a normal gate[,]" had full range of motion "with increased pain on all motions within the lumbar spine[,]" and had full motor strength throughout his upper and lower extremities).

10

Plaintiff's treating source, PA Karthaus, submitted a September 26, 2018 Medical Source Statement in which she opined that Plaintiff had osteoarthritis of multiple joints, including the shoulders, neck, elbows, wrists, and knees, as well as tendinopathy of the bilateral wrists. She stated that his recent carpal tunnel release "was not very successful[,]" and noted that pain and fatigue limited the Plaintiff's ability to do work and that he would be able to maintain 1-2 hours of steady work before needing a 30 minute break. (AR 555.) PA Karthaus further opined that Plaintiff would have difficulty with concentration, pace, and/or persistence due to his pain and could not concentrate and focus on job related tasks for continuous two-hour periods consistently throughout an eight-hour work day. She also noted that his impairments would interfere with his ability to complete job related tasks in a timely manner, that he would need more than ordinary breaks, and that Plaintiff "has worse pain if he tries to do too many activities for multiple days in a row. After a stretch of working he will consequently have several more days of impairment[.]" *Id.* at 556.

PA Karthaus opined that Plaintiff could lift or carry ten pounds occasionally and less than ten pounds frequently, could stand for thirty minutes without interruption, walk for sixty minutes without interruption, and stand or walk for a total of less than two hours in an eight-hour work day. She found that Plaintiff's wrist arthritis and tendonitis and knee meniscus tear and arthritis limited his ability to push, pull, and operate hand and foot controls and checked boxes indicating that he could reach, handle, finger, and feel less than one-third of the work day, but that he could perform those functions repetitively throughout that period of time with the exception of feeling. She also noted that Plaintiff could climb, balance, kneel, crouch, crawl, and stoop for one-third of an eight-hour work day without aggravating his impairments. PA Karthaus opined that Plaintiff's impairments or treatment would cause him to be absent from work four or more times per month. She checked boxes indicating that she had based her assessment on her personal knowledge of his medical condition and a review of his medical records.

The ALJ found that PA Karthaus's opinion "[did] not carry persuasive value" in part because she based her opinion upon the claimant's self-reports "as evidenced by her

11

repetition of what he felt he could do in terms of steady work." (AR 23.) Treatment notes from September 9, 2018 indicate that Plaintiff self-reported that he could perform "steady work maybe 1 hour[,]" but PA Karthaus opined that Plaintiff could work up to two hours. When asked to explain how the limitations were supported by clinical or objective evaluative findings, PA Karthaus wrote:

> [Plaintiff] does have tendinopathy of the wrist R[ight]-carpal tunnel release recently done was not very successful. R[ight] knee meniscus tear. [Plaintiff] seems to have a chronic fatigue-fibromyalgia like condition where any physical activity maintained for 1-2 hours leads to muscle pain myalgias and fatigue. He does have mild degenerative arthritis of the C spine and L spine (neck and low back) for which he is still completing the work up with Central Vermont Spine Center [and] surgeons.

(AR 555.) PA Karthaus found Plaintiff had "moderate pain from multi joint arthritis and a chronic pain-fibromyalgia like condition that causes muscle pain [and] fatigue[.]" *Id.* at 557. The ALJ acknowledged that PA Karthaus's opinions were based on "her personal knowledge of the claimant's medical condition, review of his medical conditions dating to 2016, and the claimant's self-reports of lack of improvement since 2012" because there were no medical records prior to 2016. (AR 22.) The ALJ nonetheless found the limitations identified by PA Karthaus were not well supported by or consistent with the medical evidence because other providers' treatment notes did not document Plaintiff's reports of fatigue but instead indicated that Plaintiff had full strength, normal gait, and did not present in pain or distress.[4] The ALJ credited Dr. Kwock's testimony that there was no disease process that would produce Plaintiff's alleged level of exhaustion, and

---

[4] *See, e.g.,* AR 344 (at March 23, 2017 examination with Dr. Ross, noting that Plaintiff "enters the office ambulating without ataxic or antalgic gait"); AR 425 (treatment notes from a January 18, 2018 appointment with Dr. Kerin indicating that Plaintiff did not present in any distress, could rise form his chair easily without pain, and had "normal strength"); AR 475 (at a June 13, 2018 examination, Dr. Aros observed that Plaintiff was in "no acute distress" and was able to ambulate without an antalgic gait); *but see* AR 525 (at a July 25, 2018 examination, PA-C Vandette noted that Plaintiff's physical exam radiographic findings were "consistent with upper back and neck myofascial pain[,]" but that he was in no acute distress); AR 571 (at a September 25, 2018 examination with NP Britton, observing that Plaintiff "walked with a normal gait" but had "increased pain on all motions within the lumbar spine").

that the clinical examinations in the record did not provide support for the significant limitations endorsed by PA Karthaus.

The ALJ was entitled to credit the medical opinion of Dr. Kwock regarding Plaintiff's limitations even if there was evidence to the contrary because she supported her assessment with citations to clinical examinations and treatment notes indicating Plaintiff did not have "deficits in strength, gait abnormalities, or that [he] presented in pain or distress[.]" (AR 21.) Because the ALJ discussed the factors set forth in 20 C.F.R. § 404.1520c(c) in finding Dr. Kwock's opinion persuasive and PA Karthaus's opinion unpersuasive and because her conclusion is supported by substantial evidence, the court is not entitled to disturb her determination of the weight to be afforded the evidence even if it might reach a different conclusion. *See Rockwood v. Astrue*, 614 F. Supp. 2d 252, 266 (N.D.N.Y. 2009) (holding that "[i]f supported by substantial evidence, the Commissioner's finding must be sustained even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the Commissioner's") (internal quotation marks, alterations, and citation omitted).

## CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's motion for an order reversing the Commissioner (Doc. 9) and GRANTS the Commissioner's motion to affirm (Doc. 15).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 22nd day of March, 2021.

Christina Reiss, District Judge
United States District Court